**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **TAMMY MARIE MARCUM,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:19cv00024 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Tammy Marie Marcum, ("Marcum"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for widow's insurance benefits based on disability, ("DWIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. §§ 402(e) and 1381 *et seq*. Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). This case is before the undersigned magistrate judge by transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). '"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Marcum protectively filed applications for DWIB[1] and SSI on October 16, 2015, alleging disability as of January 1, 1997, based on "reading, understand[ing] and education;" lower back deterioration; anxiety; depression; and bipolar disorder.[2] (Record, ("R."), at 17, 250-60, 285.) The claims were denied initially and upon reconsideration. (R. at 132-41, 144-45, 147-56, 158-60, 235-37.) Marcum then requested a hearing before an administrative law judge, ("ALJ"). (R. at 161.) A hearing was held on April 23, 2018, at which Marcum was represented by counsel. (R. at 33-65.)

By decision dated October 3, 2018, the ALJ denied Marcum's claims. (R. at 17-27.) The ALJ found that Marcum had not engaged in substantial gainful activity since January 1, 1997, the alleged onset date. (R. at 20.) The ALJ determined that Marcum had severe impairments, namely degenerative disc disease; affective disorders; and an intellectual disability, but he found that Marcum did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. (R. at 20.) The

[1] For entitlement to DWIB, Marcum must establish that her disability began on or before October 31, 2018. (R. at 18, 20.) In this case, Marcum's prescribed period began on October 13, 2011, the date the wage earner died. (R. at 18, 257.) The ALJ found that Marcum met the nondisability requirements for DWIB. (R. at 19.)

[2] Marcum is seeking disability reinstatement after she was incarcerated in 2012 for arson and insurance fraud. (R. at 43, 412, 414.) Marcum previously was allowed benefits on a prior application on July 5, 2000. (R. at 17.) Marcum testified at her hearing that she received benefits due to her "education." (R. at 43.) The ALJ in this case found that Marcum no longer qualified for benefits; therefore, he found no reason to reopen or consider her prior application. (R. at 17.)

ALJ found that Marcum had the residual functional capacity to perform medium[3] work that did not require reading on the job; that limited her to simple work with no more than one- to two-step instructions; that required her to make no more than simple work-related decisions; and that required no more than frequent interaction with co-workers and the public. (R. at 22.) The ALJ found that Marcum was able to perform her past relevant work as a floor maintenance worker. (R. at 25.) In addition, based on Marcum's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that Marcum could perform, including those of a dishwasher, a hand packager and a hospital cleaner. (R. at 26.) Thus, the ALJ concluded that Marcum was not under a disability as defined by the Act and was not eligible for DWIB and SSI benefits. (R. at 27.) *See* 20 C.F.R. §§ 404.1520(f), (g), 416.920(f), (g) (2019).

After the ALJ issued his decision, Marcum pursued her administrative appeals, (R. at 246-47), but the Appeals Council denied her request for a review. (R. at 1-5.) Marcum then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2019). This case is before this court on Marcum's motion for summary judgment filed December 4, 2019, and the Commissioner's motion for summary judgment filed January 31, 2020.

---

[3] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2019).

## *II. Facts*[4]

Marcum was born in 1964, (R. at 39, 250), which classifies her as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). She completed the sixth grade[5] and has past work experience as a floor maintenance worker, an institution cook and a fast food worker. (R. at 39, 60.) Marcum stated that these jobs did not require her to read. (R. at 41-42.) Marcum testified that she repeated "a few grades," and that she left school while in the seventh grade when she was 16 years old. (R. at 39.) She stated that she could not "read and understand." (R. at 40.) Marcum stated that she was able to obtain a driver's license because the test was read to her. (R. at 40.) Marcum stated that she received disability benefits for over 14 years before being incarcerated in 2012. (R. at 43.) She stated that, while receiving benefits, she worked part-time as a cook in a nursing home for about six months to a year, and she worked part-time at Lee High School cleaning rooms from 2008 through January 2011. (R. at 37-38, 44, 287.)

Asheley Wells, a vocational expert, also testified at Marcum's hearing. (R. at 60-64.) Wells stated that Marcum's past work as a floor maintenance worker[6] was unskilled, medium work; her work as an institution cook was skilled, medium

---

[4] Based on the court's findings regarding Marcum's argument related to her mental residual functional capacity, the court will focus on the facts related to Marcum's mental impairments and accompanying limitations.

[5] Marcum indicated on her Disability Report that she completed the seventh grade; however, at her hearing, she testified that she completed the sixth grade. (R. at 39, 286.)

[6] Wells stated that the Dictionary of Occupational Titles, ("DOT"), code for the floor maintenance worker was 381.687-018. The DOT title for code 381.687-018 is cleaner, industrial, with alternate titles including clean-up worker; janitor; and sanitor. *See* DICTIONARY OF OCCUPATIONAL TITLES, Cleaner, Industrial, 381.687-018 (4th ed. rev. 1991).

work, but light[7] as performed by Marcum; and her work as a fast food worker was unskilled, light work. (R. at 60.) Wells was asked to consider a hypothetical individual of Marcum's age, education and work history, who would be limited to simple, medium work that required no more than one- to two-step instructions, that did not require her to make more than simple work-related decisions and that did not require more than frequent interaction with co-workers and the public. (R. at 61.) She stated that the hypothetical individual could perform Marcum's past work as a fast food worker and floor maintenance worker. (R. at 61.) Wells also stated that there were other jobs that existed in substantial numbers that such an individual could perform, including jobs as a dishwasher, a hand packager and a hospital cleaner, all of which were classified as medium, unskilled work. (R. at 61.)

Wells then was asked to consider the same hypothetical individual, but who would not be required to read. (R. at 62.) She stated that such an individual could perform Marcum's past work as a floor maintenance worker, as well as the other jobs previously identified. (R. at 62.) Wells was asked to consider hypothetical individual number two, but who would be limited to sitting for no more than one hour at a time, who could stand for no more than 10 minutes at a time and who could walk for no more than five minutes at a time. (R. at 62.) She stated that there would be sedentary[8] jobs available that such an individual could perform,

---

[7] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(b) (2019).

[8] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

including jobs as an assembler, a weight tester and a cuff folder. (R. at 63.) Wells stated that there would be no jobs available should the individual be limited to sedentary work and who would be off task 20 percent of the workday. (R. at 63.) Finally, Wells stated that, there would be no jobs available, should the hypothetical individual have no useful ability to understand, remember and carry out simple instructions on a regular basis. (R. at 64.)

In rendering his decision, the ALJ reviewed records from Joseph Leizer, Ph.D., a state agency psychologist; Dr. Joseph Familant, M.D., a state agency physician; Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Virginia Department of Corrections, ("VDOC"); Frontier Health; Elizabeth A. Jones, M.A., a licensed senior psychological examiner; Dr. Edmund T. Vu, D.O.; Medical Associates of Jonesville; and University of Virginia Health System, ("UVA").

In November 2012, while incarcerated, Marcum requested that she see a nurse, stating that she believed she was having a panic attack. (R. at 384.) Marcum complained of chest pain and shortness of breath. (R. at 384.) In February and March 2013, Marcum was seen through the VDOC and diagnosed with major depressive disorder, anxiety disorder, not otherwise specified, and post-traumatic stress disorder, ("PTSD"). (R. at 382-83.) Marcum was prescribed Cymbalta and Neurontin. (R. at 383.) In March 2013, Marcum reported that her symptoms had improved "a little." (R. at 382.) Dosages of both the Cymbalta and Neurontin were increased. (R. at 382.) On April 3, 2013, Marcum reported a history of depression beginning in 2011 after her husband's death. (R. at 415.) Marcum's appearance,

---

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2019)

behavior, speech, mood, affect, thought process and content, perception and cognition were within normal limits. (R. at 418.) B. Mfonyam, a psychologist associate I, diagnosed major depressive disorder, single episode, mild, and PTSD tendencies. (R. at 418.) On May 29, 2013, Dr. A. Williams, M.D., a psychiatrist with VDOC, saw Marcum who reported stressors, including her husband's suicide and the death of her mother. (R. at 412.) She stated that during her childhood, her sister's boyfriend would discharge weapons in their home, and he later killed her sister. (R. at 412.) Marcum was clean and cooperative; her speech was a bit rapid; her thought process was linear; and she had an anxious mood and affect. (R. at 412.) Dr. Williams diagnosed probable generalized anxiety disorder. (R. at 412.)

In September 2014, it was noted that, while incarcerated, Marcum was approved to work in food services, (R. at 395), and she was seen for a bruise/contusion to her right knee after falling while working with the floor crew. (R. at 396.) On February 27, 2015, Marcum was seen through the VDOC for complaints of depression, anxiety and migraine headaches. (R. at 410.) On mental status examination, Marcum was pleasant and cooperative; she had a euthymic mood and congruent affect; her thought content was goal-directed; she had no gross deficits of attention, concentration or memory; and she had "marginal" judgment and insight. (R. at 410.) Marcum was diagnosed with history of PTSD, and major depressive disorder and she was prescribed Zoloft. (R. at 410.) On April 9, 2015, a medical discharge summary was completed in preparation for Marcum's anticipated release in October 2015. (R. at 346-51.) Marcum's diagnoses were PTSD, bipolar disorder and anxiety, and it was noted that she was treated with medication and counseling. (R. at 346.) On May 21, 2015, Dr. Williams noted that Marcum's speech was rapid and hyperverbal; her thought process was linear, but

she “did jump a bit from topic to topic;” her mood was depressed and anxious; and her affect was full in range, bright and pleasant. (R. at 408.) Dr. Williams diagnosed major depressive disorder, mild, with anxious distress, and possibly an adjustment disorder, mixed. (R. at 408.)

On September 4, 2015, a Mental Health Release Summary To Community form was completed through the VDOC. (R. at 401-04.) Marcum’s speech was normal; her thought process was logical and linear, but she changed topics frequently; her mood was depressed and anxious; her affect was full in range, bright and pleasant; and her judgment and insight were good. (R. at 402.) Marcum’s diagnoses were persistent depressive disorder with anxious distress, moderate to severe; and academic or educational problems. (R. at 403.) It was noted that Marcum would benefit from outpatient therapy to address her depression and past traumatic experiences. (R. at 403.)

On January 6, 2016, Jennifer Snodgrass, R.N., Q.M.H.P., a registered nurse and qualified mental health provider with Frontier Health, reported that Marcum was clinically stable and remained motivated to continue services and work on treatment goals. (R. at 479.) On February 17, 2016, Marcum saw Stephanie Davis, Q.M.H.P., a qualified mental health provider at Frontier Health, requesting medication for her anxiety and depression. (R. at 476.) Davis reported that Marcum’s mood was depressed with a congruent affect; her speech was clear and coherent; her thought process was logical and organized; and she was appropriately dressed. (R. at 476.)

On April 6, 2016, Elizabeth A. Jones, M.A., a licensed senior psychological examiner, evaluated Marcum at the request of Disability Determination Services. (R. at 436-40.) Jones reported that Marcum's affect was moderately blunted with a congruent mood; she made excellent eye contact; her stream of conversation was appropriate; she was rational and alert; her vocabulary was somewhat impoverished; and she had no significant difficulties relating to others. (R. at 438-39.) The Wechsler Adult Intelligence Scale – Fourth Edition, ("WAIS-IV"), was administered, and Marcum obtained a full-scale IQ score of 59. (R. at 439.) Jones diagnosed intellectual disability, mild; and persistent depressive disorder with anxious distress. (R. at 440.) Jones noted that Marcum had a significant history of learning difficulties and was unable to pass the requirement to obtain a general educational development, ("GED"), diploma. (R. at 440.) Jones encouraged Marcum to pursue outpatient counseling to address her depression, which was described as mild to moderate. (R. at 440.)

Jones opined that Marcum had marked limitations in her ability to understand and remember, which would cause difficulty remembering simple instructions. (R. at 440.) She found that Marcum had moderate limitations in her ability to sustain concentration and persistence, and she would have difficulty maintaining schedules and attendance. (R. at 440.) Jones found that Marcum had moderate limitations in the area of social interaction, which may cause some difficulty interacting with the general public; and moderate limitations in the area of adaptation, which would cause significant difficulty setting goals and making plans independently of others. (R. at 440.)

On May 6, 2016, Joseph Leizer, Ph.D., a state agency psychologist, ("J. Leizer"), completed a Psychiatric Review Technique form, ("PRTF"), indicating that Marcum suffered from severe affective disorders and a severe intellectual disability. (R. at 74.) He found that Marcum was mildly restricted in her activities of daily living; experienced moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 74.) J. Leizer noted that Marcum had marked limitations in her ability to understand and remember due to an intellectual disability and would have difficulty remembering simple instructions. (R. at 74.) He found that Marcum would have moderate limitations in her ability to sustain concentration and persistence, and she would have some difficulty maintaining schedules and attendance. (R. at 74.) He also noted that Marcum had legal difficulty as a result of poor judgment. (R. at 74.) J. Leizer also found that Marcum would have moderate limitations in the area of social interaction, including difficulty interacting with the general public. (R. at 74.) He also opined that Marcum would be moderately limited in the area of adaption and that she would have significant difficulty setting goals and making plans independent of others. (R. at 74.)

That same day, J. Leizer completed a mental assessment, indicating that Marcum had moderate limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact

appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (R. at 77-79.)

On May 21, 2016, Dr. Edmund T. Vu, D.O., examined Marcum. (R. at 449-52.) Marcum alleged disability due to lower back pain, depression, anxiety and restless leg syndrome. (R. at 449.) Dr. Vu reported that Marcum was slightly depressed with a flat affect; she was able to communicate with no deficits; her recent memory was impaired; her remote memory was intact; and she had good insight and cognitive function. (R. at 450.) Dr. Vu diagnosed tobacco abuse; learning disability; lower back pain; restless leg syndrome; depression; and anxiety. (R. at 451.) He opined that Marcum could lift and carry items weighing up to 20 pounds; she could sit, walk and/or stand for a full workday; she could hold a conversation and respond appropriately to questions; and she could remember and carry out basic instructions. (R. at 451.)

On July 20, 2016, Joyce F. Thompson, F.N.P., a family nurse practitioner with Frontier Health, reported that Marcum's mood was depressed with a congruent affect; her speech was clear, coherent and relevant; she maintained good eye contact; her cognitive function was grossly intact; her general fund of knowledge was average; and her judgment and insight were appropriate. (R. at 471-73.) Thompson diagnosed major depressive disorder, recurrent, severe; and PTSD. (R. at 472.)

On September 20, 2016, Howard S. Leizer, Ph.D., a state agency psychologist, ("H. Leizer"), completed a PRTF, indicating that Marcum suffered from severe affective disorders and a severe intellectual disability. (R. at 106-07.) He found that Marcum was mildly restricted in her activities of daily living; experienced moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and had experienced no repeated episodes of extended-duration decompensation. (R. at 107.) H. Leizer noted that Marcum had marked limitations in her ability to understand and remember due to an intellectual disability and would have difficulty remembering simple instructions. (R. at 107.) He found that Marcum would have moderate limitations in her ability to sustain concentration and persistence, and she would have some difficulty maintaining schedules and attendance. (R. at 107.) He also noted that Marcum had legal difficulty as a result of poor judgment. (R. at 107.) H. Leizer also found that Marcum would have moderate limitations in the area of social interaction, including difficulty interacting with the general public. (R. at 107.) He also opined that Marcum would be moderately limited in the area of adaptation and that she would have significant difficulty setting goals and making plans independent of others. (R. at 107.)

That same day, H. Leizer completed a mental assessment, indicating that Marcum had moderate limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact

appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (R. at 110-12.)

On October 5, 2016, Marcum complained of depression, anxiety and pain in her back, legs and feet. (R. at 489.) She had an unintentional nine-pound weight loss. (R. at 489.) Marcum had decreased range of motion, tenderness and pain in her lumbar back; her mood, affect and behavior were normal; and her judgment and thought content were normal. (R. at 491.) G. Elaine Hamilton, N.P., a nurse practitioner with Wellmont Medical Associates, diagnosed anxiety, depression, insomnia and chronic bilateral low back pain with sciatica. (R. at 491.)

On July 24, 2017, Marcum reported that her anxiety and depression had increased due to family problems. (R. at 531.) Hamilton reported that Marcum's behavior, judgment, thought content, cognition and memory were normal, and she appeared anxious. (R. at 533.) On October 19, 2017, Marcum reported that, although her depression was constant and severe, it was improving. (R. at 551.) She stated that she was able to perform her activities of daily living with limitations. (R. at 551.) Marcum's mood, affect, behavior, judgment and thought content were normal. (R. at 553.) On November 20, 2017, Marcum was seen for a facial injury, which was inflicted by her boyfriend. (R. at 558.) Marcum had decreased range of motion, tenderness and pain in her lumbar back, and her mood, affect and behavior were normal. (R. at 561.) On November 22, 2017, Marcum reported increased tearfulness and irritability. (R. at 485.) She also reported that she felt smothered and sick to her stomach while in crowds. (R. at 485.)

On January 23, 2018, Marcum's speech, behavior, thought content, cognition and memory were normal; her mood was depressed and anxious; and she had inappropriate judgment. (R. at 572.) On February 26, 2018, Marcum's mood, affect and behavior were normal. (R. at 577.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DWIB and SSI claims. *See* 20 C.F.R. §§ 404.335(c), 404.1505, 404.1520, 416.920 (2019); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2019).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B);

*McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Marcum argues that the ALJ's decision is not based on substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-17.) Marcum argues that the ALJ failed to properly consider her past work activity. (Plaintiff's Brief at 10-11.) Marcum argues that the ALJ erred by finding that she could perform her past work, which she had not performed since 1997, more than 15 years prior to the ALJ's decision. (Plaintiff's Brief at 10-11.) Marcum further argues that the ALJ failed to properly evaluate the opinions of Jones, Dr. Vu, J. Leizer and H. Leizer. (Plaintiff's Brief at 11-15.) Finally, Marcum argues that the ALJ failed to base his decision on the record, in that he did not properly consider her treatment records from the UVA Spine Center, which failed to support that she could perform medium work. (Plaintiff's Brief at 15-17.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

The ALJ found that Marcum had the residual functional capacity to perform medium work that did not require reading on the job; that limited her to simple work with no more than one- to two-step instructions; that required her to make no more than simple work-related decisions; and that required no more than frequent interaction with co-workers and the public. (R. at 22.) Based on my review of the record, I do not find that substantial evidence exists to support this finding.

In making this residual functional capacity finding, the ALJ stated that he was giving "great weight" to the opinions of the state agency psychologists, J. Leizer and H. Leizer, because their opinions were "consistent [with the] objective evidence as a whole." (R. at 24.) The ALJ also stated that he was giving psychologist Jones's opinion as to her finding of mild intellectual disability "great weight." (R. at 25.) The state agency psychologists and Jones all found that Marcum had "marked" limitations in her ability to understand and remember, which would cause difficulty remembering simple instructions. (R. at 74, 107, 440.) In addition, they opined that Marcum had "moderate" limitations in her ability to sustain concentration and persistence, which would cause difficulty maintaining schedules and attendance; and she was moderately limited in her ability to adapt, which would cause significant difficulty setting goals and making plans independent of others. (R. at 74, 107, 440.) In addition, both state agency psychologists opined that Marcum had "moderate" limitations in her ability to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept

instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others (R. at 77-79, 110-12.)

While the ALJ noted that he was giving great weight to the state agency psychologists' opinions because they were consistent with the objective evidence of record, he failed to address the marked and moderate limitations assessed by them. It is well-settled that, in determining whether substantial evidence supports the ALJ's decision, the court must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. "[T]he [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). "The courts … face a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

In addition, the ALJ noted that Marcum was awarded benefits on a prior application on July 5, 2000. (R. at 17.) The ALJ stated that, "[Marcum] no longer qualified for disability and payments were discontinued. There is no reason to reopen or consider the prior application." (R. at 17.) Marcum's benefits were

discontinued after she was incarcerated in 2012. (R. at 43.) Marcum testified that she received benefits due to her "education." (R. at 43.) Marcum testified that she completed the sixth grade and that she had repeated "a few grades" prior to leaving school at the age of 16. (R. at 39.) She stated that she could not "read and understand." (R. at 40.) The record shows that, in April 2016, Marcum obtained a full-scale IQ score of 59. (R. at 439.) She was diagnosed with intellectual disability, mild; and persistent depressive disorder with anxious distress. (R. at 440.) Psychologist Jones noted that Marcum had a significant history of learning difficulties and was unable to pass the requirement to obtain her GED. (R. at 440.) While the ALJ mentioned that Marcum had been awarded disability benefits in July 2000, it is unclear from the record if Marcum was awarded benefits at the initial stage or if an ALJ rendered a decision. Thus, I cannot determine if the ALJ failed to evaluate Marcum's prior disability benefits award in accordance with *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 477 (4th Cir. 1999).

> In accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the

length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." AR 00-1(4), WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings (West Supp. 2013).

While a step-by-step explanation is not required for an ALJ to comply with AR 00-1(4), an ALJ's written decision must provide an explanation for discrediting or failing to adopt past administrative findings favorable to the claimant. *See Grant v. Colvin*, 2014 WL 852080, at *7 (E.D. Va. Mar. 4, 2014). The ALJ has a duty to resolve conflicts within the record and provide the claimant with a justification for the resolution. *See Kasey v. Sullivan*, 3 F.3d 75, 79 (4th Cir. 1993). Based on my review of the record, I cannot find that substantial evidence exists to support the ALJ's mental residual functional capacity finding.

Based on these findings, I will not address Marcum's remaining arguments. An appropriate Order and Judgment will be entered remanding Marcum's claim to the Commissioner for further development.

DATED: September 11, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE